UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MSP RECOVERY CLAIMS, SERIES LLC,** a Delaware entity,<br><br>    Plaintiff,<br>v.<br><br>**THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,**<br><br>    Defendant. | Case No.: 3:22-cv-949<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

Plaintiff MSP Recovery Claims, Series LLC ("MSPRC"), a Delaware entity, on behalf of its Designated Series, brings this action against Defendant The Travelers Home and Marine Insurance Company, ("Travelers" or "Defendant"), and alleges:

## INTRODUCTION

1. More than forty years ago, Congress passed the Medicare Secondary Payer Act (the "Act" or "MSP Act") to deal with ballooning medical entitlement costs, by transforming Medicare from the entity that always foots the bill, into a safety net for the medical expenses of beneficiaries who also were covered by private plans and insurers such as Travelers.

2. Six years later, Congress recognized that it needed to do more to make this transformation effective and amended the MSP Act to add a private cause of action so persons and private entities could recover secondary payments made by Medicare (and later, by Medicare Advantage Organizations ("MAOs"))[1] that private plans and insurers had failed to reimburse.

---

[1] MAOs include Medicare Service Organizations ("MSOs"), Independent Physician Associations

1

Congress provided for double damages, so that private litigants would be motivated to take arms against a recalcitrant insurer.

3. In 1997, Congress created the "Medicare Advantage" option under Part C of Medicare, 42 U.S.C. § 1395w-21(a)(1)(B), with the hope that Medicare Advantage would eclipse traditional Medicare. Under Medicare Advantage, Medicare enrollees receive their Medicare benefits from a private health insurer, which are known as Medicare Advantage Organizations or "MAOs." Today, nearly 40% of all Medicare beneficiaries receive their benefits under a Medicare Advantage Plan.

4. Even though it is settled law that MAOs have parity of recovery rights, insurers have disregarded for more than a decade their repayment obligations to MAOs. That failure improperly depletes the trust funds that support Medicare Advantage, which are the same trust funds that support Medicare Parts A and B. *See* 42 U.S.C. § 1395w-23(f). Accordingly, Congress' mandate that Medicare shall not be the entity that always foots the bill is still a long way from being implemented. This case seeks to reconcile, in a structured and fair way, claims for reimbursement that Travelers owes to MAOs that assigned their rights to MSPRC, which will more effectively implement Congress' original intent in passing the MSP Act.

## TRAVELERS'S DUTIES TO MEDICARE AND MAOS

5. Travelers is a property and casualty insurer in the business of collecting premiums in exchange for taking on the risk that insureds will be injured, and Travelers will be contractually obligated to pay for their insureds' accident-related medical care. Travelers also collects premiums

---

("IPAs"), and other first tier and downstream entities (collectively "MAOs"). As the Eleventh Circuit has explained, "some MAOs contract with smaller organizations, like independent physician associations, that have closer connections to local healthcare providers. These smaller organizations, or 'downstream' actors, are also a part of the Medicare Advantage system . . . ." *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2758 (2021).

2

in exchange for taking on the risk that their insureds will injure someone else, and Travelers will be required to indemnify its insureds, typically through a settlement agreement that releases the third-party claimant's claim for accident-related medical care.

6. Under both circumstances, Travelers falls within the MSP Act's definition of a "primary plan," which includes "an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A). As a primary plan, Travelers is charged with two duties under the Act: (1) to notify the secondary payer (whether it be Medicare or an MAO) of Travelers's primary payer status, and (2) to repay the secondary payer, within 60 days. 42 U.S.C. § 1395y(b)(2)(B)(ii), 1395w-22(a)(4).

7. If Travelers is rendered a primary plan and fails to repay the Medicare lien within 60 days, the MSP Act automatically gives rise to a right to bring an action such as this one. Failure to reimburse Medicare or MAOs for accident-related medical payments effectively results in a windfall for Travelers, to the detriment of the Medicare trust funds and taxpayers.

## PARTIES, JURISDICTION, AND VENUE

8. MSPRC, is a Delaware series limited liability company with a principal place of business located at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134.

9. MSPRC is a Series LLC. Under Delaware law, a Series LLC operates similarly to, but not the same as, a corporation and its subsidiaries. MSPRC is the master LLC. Each individual Series entity forms a part of MSPRC, and MSPRC owns and controls each individual Designated Series entity.

10. MSPRC established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other company assets, and to account for and associate certain assets with certain series. All designated series form a part of MSPRC, and pursuant to MSPRC's limited liability agreement and applicable amendment(s), each

3

designated series is owned and controlled by MSPRC.

11.     MSPRC may either (1) receive assignments directly to it from third parties in the name of MSPRC, and further associate such assignments with a particular Series, or (2) may have claims assigned directly to a particular Designated Series. In either event, MSPRC possesses the right to sue on behalf of each Designated Series and pursue any and all rights, benefits, and causes of action arising from assignments to a Designated Series by way of its limited liability agreement.

12.     As permitted under Delaware law, MSPRC's limited liability agreement vests in the master LLC the right to initiate and maintain legal proceedings on behalf of its Designated Series entities individually or collectively. Any claim or suit may be brought by MSPRC in its own name, or in the name of its Designated Series, individually or collectively.

13.     MSPRC specifically alleges it possesses valid assignments to bring actions for seeking redress for all claims described herein.

14.     Series 44-20-461 is a Designated Series entity of MSPRC with its principal place of business at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134.

15.     MSP made a good faith effort to accurately identify Travelers in this Complaint, in reliance on information obtained from Travelers's website, police crash reports, and reporting data from Insurance Services Office ("ISO") and an independent vendor, MyAbility, which is part of Ability Network.[2] MyAbility allows companies, such as MSP, to access data that primary payers report to CMS. Reporting data attached as **Exhibit A** to this Complaint is taken directly from data inputted by Travelers to CMS, either directly or through its vendor (such as ISO). Accordingly, any inaccuracy or lack of specificity in the data is attributable to Travelers.

16.     The Travelers Home and Marine Insurance Company is an insurer who issues

---

[2] If Travelers's reporting method resulted in MSPRC identifying the incorrect Travelers affiliate, MSPRC reserves the right to amend this Complaint and add the correct defendant.

4

liability and no-fault policies and is incorporated in the state of Connecticut. According to National Association of Insurance Commissioner's website located at https://sbs.naic.org/solar-external-lookup/lookup/company/summary/134515048?jurisdiction=CT [last accessed on July 27, 2022], its principal place of business is in the state of Connecticut at the address of One Tower Square, PB06A, Hartford, Connecticut 06183.

17. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.

18. Venue is proper in this District pursuant to 28 U.S.C. §1391 (b), (c), and (d) because at all times material hereto, Travelers resided, transacted business, was found, or had agents in this District, and a substantial portion of the alleged activity affecting trade and commerce discussed below has been carried out in this District.

19. This Court has personal jurisdiction over Travelers because it is at home in this forum, and personal jurisdiction over Travelers does not offend traditional notions of fair play and substantial justice.

## STANDING ALLEGATIONS

20. MSPRC uncovers MSP Act noncompliance through data analytics, which requires cross-referencing unreimbursed, accident-related conditional payments in their assignors' claims data with instances where auto insurers reported to CMS under Section 111 that they were responsible, which made them primary payers under the MSP Act as a matter of law. While MSPRC has no direct access to the Section 111 reporting, MSPRC obtains reports from MyAbility which, as alleged above, is a subscription service that contracts with CMS and provides to subscribers what primary payers report to CMS.

21. While this cross-referencing exercise may be successful in identifying some unreimbursed conditional payments, the bulk of those payments remain hidden without discovery.

This is so because auto insurers either failed to report all their claims pursuant to Section 111 (which until this year, resulted in no penalty) or withdrew their reports prior to detection by an MAO. The only way to fully identify all secondary payments that auto insurers failed to reimburse is by comparing an MAO's and an auto insurer's claims data.

22. For the above reasons, the accurate and complete amount of MSPRC's damages cannot be known until after Travelers has produced lists of no-fault and third-party claims that they settled. Accordingly, and solely for the purpose of demonstrating standing to pursue claims against Travelers, and to obtain the discovery MSPRC needs, the following examples of Travelers's failures to reimburse and comply with the MSP Act are alleged below.

23. MSPRC sets forth the representative beneficiary below to illustrate Travelers's failure to fulfill its statutory duties to reimburse MAOs for conditional payments, including: (i) as a direct "no-fault" and/or other liability insurer, and (ii) when entering into settlements on behalf of tortfeasors who are sued by Medicare beneficiaries. In these instances (including the instance for the representative beneficiary listed below), Travelers reported and admitted its primary payer status and responsibility for the accident-related expenses for medical items and/or services provided to beneficiary for which the assignor made conditional payments.

### The Settlement Representative Beneficiary

24. In exchange for premiums, Travelers may take on the risk of loss and accident-related medical expenses incurred by third parties who suffered an injury induced by either its customers and/or their covered property. When these instances arise, Travelers executes a settlement agreement (on behalf of its insured) with the covered person(s).

25. When Travelers executes a settlement agreement with a covered person who is enrolled in a Medicare plan, Travelers becomes a primary payer that is responsible for the reimbursement of the medical services rendered to the covered person. Travelers's duty to reimburse conditional payments made by Medicare Participants for the health services rendered is nondelegable. Travelers

6

may not transfer its responsibility for reimbursement to covered persons or other third parties.

26. After executing a settlement agreement in the instance identified below, Travelers failed to provide actual notice of its primary payer status to the Medicare participants who paid for the beneficiaries' medical expenses. Travelers may not rely on state law to shirk its federal statutory reimbursement obligations to the Medicare system. Travelers may not sit, wait, derelict its federal affirmative duties and then invoke absolution under state law.

**L.L.**

27. On August 24, 2017, L.L. was enrolled in a Medicare Advantage Plan issued by BCBSRI (as defined in Appendix II), an MAO and MSPRC's Designated Series assignor in this action. (Accurate information regarding MSPRC's assignment from BCBSRI is provided in Appendix II).

28. On August 24, 2017, L.L. was injured in an accident. As a direct and proximate result of the accident, L.L. sustained injuries that required medical items and services.

29. Travelers's insured responsible for the incident was insured under policy number H4L1188005.

30. A list of L.L.'s diagnosis codes and injuries in connection with L.L.'s accident-related treatment is attached hereto as **Exhibit B**. (For more explanation regarding the format of claims data in this exhibit, *see* Appendix I). The medical services were rendered between August 24, 2017, and December 6, 2017. The medical providers subsequently issued bills for payment of L.L.'s accident-related medical expenses to BCBSRI. The medical providers billed and charged BCBSRI $3,446.42 for L.L.'s accident-related medical expenses, of which BCBSRI paid $235.98 (*See* **Exhibit B**). At the time BCBSRI executed its assignment agreement in favor of Series 44-20-461, BCBSRI's right to seek reimbursement for L.L.'s accident-related treatment was never assigned to and/or pursued by other recovery vendors. BCBSRI held all recovery rights to L.L.'s accident-related treatment and conveyed them to MSPRC. BCBSRI did not retain the recovery right to L.L.'s claim.

31. Following L.L.'s claim against Travelers's insured, Travelers indemnified its insured tortfeasor and made payments pursuant to a settlement with L.L. By virtue of entering into that settlement and obtaining a release of all claims, Travelers became a primary payer responsible for payment and/or reimbursement of L.L.'s accident-related medical expenses.

32. In fact, Travelers reported information to CMS regarding the accident, the name of the reporting entity, the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of L.L.'s accident-related medical expenses. (*See* **Exhibit A**).

33. This reporting demonstrates Travelers was aware of its responsibility to reimburse BCBSRI.

34. Despite reporting it was a primary payer, and the corresponding admission it should have paid for L.L.'s accident-related injuries, Travelers failed to remit and/or reimburse such payments.

35. Travelers was aware of its MSP Act responsibility to reimburse conditional payments advanced for medical services rendered to L.L. Travelers was also aware of its 42 C.F.R. § 411.24(f)(2) duty to notify the Medicare carrier that paid for L.L.'s medical expenses, in this instance BCBSRI. Travelers did not notify BCBSRI of its primary responsibility to pay for L.L.'s medical expenses.

36. In the time since the incident, Travelers has enjoyed the use of BCBSRI's funds to the detriment of the Medicare system. MSPRC has sent a 42 C.F.R. § 411.25 demand letter to Travelers contemporaneously with the filing of this Complaint. If MSPRC receives a response to the 42 C.F.R. § 411.25 demand letter from Travelers, then MSPRC will amend the Complaint accordingly.

37. MSPRC expended a great deal of effort and resources to uncover Travelers's failures in the handling of L.L.'s claims and the unjust enrichment Travelers has benefitted from during this period of noncompliance. As BCBSRI's assignee, MSPRC instituted this action to recover the debt.

38. Accordingly, MSPRC is entitled to collect double damages against Travelers for its

failure to reimburse BCBSRI's conditional payment for L.L.'s accident-related medical expenses.

## Statute of Limitations Tolling

39. To the extent necessary, the claims asserted in this Complaint have been tolled as a matter of law by the pendency of various class actions, as to which BCBSRI was a putative class member, alleging MSP Act violations.[3]

## COUNT I

### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)
### (as to BCBSRI's unreimbursed payments)

40. MSPRC re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs 1-39 as if fully set forth herein.

41. MSPRC asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A).

42. Travelers's no-fault and liability policies are primary plans, which rendered Travelers the primary payer for its beneficiaries' accident-related medical expenses.

43. As part of providing Medicare benefits under the Medicare Advantage program, BCBSRI paid for items and services which were also covered by no-fault, personal injury protection, or medical payments policies issued by Travelers.

44. Travelers also entered into settlements with beneficiaries relating to accidents but failed to reimburse BCBSRI for accident-related medical expenses paid by BCBSRI. As primary payers, Travelers had a nondelegable duty to reimburse conditional payments advanced by Medicare participants for medical services rendered to beneficiaries. Travelers is liable for reimbursement of these accident-related medical expenses, even if it subsequently paid out the maximum benefits under the policies.

45. Travelers was required to timely reimburse BCBSRI for conditional payments

---

[3] *See, MSP Recovery Claims, Series LLC, et al v. Northland Insurance Company, et al*, Case no., 20-cv-24176-KMW (S.D. Fla., October 12, 2010).

made on behalf of beneficiaries' accident-related medical expenses.

46. BCBSRI suffered damages as a direct result of Travelers's failure to comply with its statutory and regulatory duties under the MSP Act and its corresponding Code of Federal Regulations.

47. Travelers derived substantial monetary benefit by placing the burden of financing medical treatments on BCBSRI.

48. Travelers failed to administratively appeal BCBSRI's rights to reimbursement within the administrative remedies period. Travelers, therefore, is time-barred from challenging the propriety, reasonableness and necessity of the amounts paid.

49. MSPRC only seeks to recoup medical services rendered to beneficiaries that were related to the accidents.

50. MSPRC brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Travelers for its failure to make appropriate and timely reimbursement of conditional payments for beneficiaries' accident-related medical expenses.

## COUNT II
### Declaratory Relief Pursuant to 28 U.S.C. § 2201 (as to BCBSRI's unreimbursed payments)

51. MSPRC re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs 1-39 as if fully set forth herein.

52. MSPRC alleges that as part of providing Medicare benefits under the Medicare Advantage program, BCBSRI paid for items and services which were also covered by no-fault, personal injury protection, or medical payments policies issued by Travelers.

53. Travelers entered into settlements with beneficiaries relating to accidents but failed to reimburse BCBSRI for accident-related medical expenses paid by BCBSRI. As a primary payer, Travelers had a nondelegable duty to reimburse conditional payments advanced by Medicare

participants for accident-related medical services rendered to covered persons. Travelers is liable for reimbursement of these accident-related medical expenses, even if they subsequently paid out the maximum benefits under the policies.

54. Travelers was required to timely reimburse BCBSRI for conditional payments made on behalf of beneficiaries' accident-related medical expenses.

55. An actual, present, and justiciable controversy has arisen between MSPRC and Travelers concerning its obligation to reimburse BCBSRI.

56. MSPRC seeks a declaratory judgment from this Court establishing that The Travelers Home and Marine Insurance Company has a historical, present, and continuing duty to reimburse BCBSRI for payments made on behalf of beneficiaries' accident-related medical expenses. MSPRC also seeks a declaration of what amounts are due and owing by The Travelers Home and Marine Insurance Company to BCBSRI.

57. A determination of what amounts are owed by Travelers to BCBSRI is exceedingly complicated, difficult, and the amounts due are not readily ascertainable.

58. Under Connecticut law, one of several conditions must exist for an equitable accounting: there must either be a fiduciary relationship, or the existence of mutual and/or complicated accounts, or a need of discovery, or some other special ground of equitable jurisdiction, such as fraud.

59. A coordination of benefits process requires plans to share information between the primary payer and secondary plan and to act in good faith.

60. The Code of Federal Regulations defines the coordination of benefits system as a "coordination of benefits transaction."[4]

---

[4] The "coordination of benefits transaction" is the transmission from any entity to a health plan for the purpose of determining the relative payment responsibilities of the health plan, of either of the following for health care: (a) claims and (b) payment information. 45 C.F.R. § 162.1801.

11

61.     The coordination of benefits transaction involves the exchange of thousands of claims data and data points between the parties to determine overlapping instances where BCBSRI made payment of medical items and services on behalf of a Medicare beneficiary who was also insured by Travelers.

62.     The exchange of claims data would need to be done by extracting and producing certain data fields from Travelers's and MSPRC's databases by using demographic identifiers, such as Social Security Number ("SSN"), Health Insurance Claim Number ("HICN"),[5] date of birth, sex, and address. Beneficiary matching pinpoints the number of relevant insureds and simplifies the process of identifying reimbursable claims, which is done by matching the date of loss (for Travelers), with dates of payment (for MSPRC), and then discovering what Travelers reimbursed (if anything), and to whom.

63.     The data MSPRC requests from Travelers to perform an accounting is information MSPRC is already entitled to without litigation. 42 C.F.R. § 411.25(a); 59 Fed. Reg. 4285.

64.     Given the size of the claims and data points being exchanged between the parties, the coordination of benefits transaction is complex.

65.     An equitable accounting of the amounts owed MSPRC by Travelers is proper because the facts and accounts presented are so complex that adequate relief may not be obtained at law.

66.     MSPRC is entitled to an accounting of all instances where Travelers settled under a third-party insurance policy or accepted coverage under a first party insurance policy, including the identity of each claimant, or if known to Travelers, claimants for whose benefit BCBSRI provided or paid for items or services.

---

[5] Also known as a Medicare Beneficiary Identifier ("MBI").

67. Thus, MSPRC lacks an adequate legal remedy to obtain the requested information, and an accounting is the appropriate remedy.

## JURY TRIAL DEMAND

MSPRC demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

WHEREFORE, MSPRC, seeks a judgment granting the following relief;

i. a judgment awarding reimbursement of double damages for those amounts to which MSPRC is entitled under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

ii. a judgment ordering an accounting of all instances where Travelers settled under a third-party insurance policy or accepted coverage under a first party insurance policy, including the identity of each claimant, or if known to Travelers, claimants for whose benefit BCBSRI provided or paid for items or services;

iii. a judgment awarding MSPRC pre-judgment and post-judgment interest consistent with the statute; and

iv. a judgment awarding MSPRC such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED on July 27, 2022.

*/s/Sanford P. Dumain*
Sanford P. Dumain (CT Bar No. 08138)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza
Garden City, NY 11530
Tel: (212) 594-5300
Fax: (212) 818-9150
Email: sdumain@milberg.com
***Attorney for Plaintiff***

## APPENDIX I

## CMS' Standard for Storing Digital Health Insurance Claims Data

1. It is the custom and practice of CMS and Primary Payers to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

    a. The 837 standard is mandated by the federal government and used federal and state payors such as Medicare and Medicaid.

    b. The 837 standard is also used by private insurers, hospitals, clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

    c. Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2. Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

    a. <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

        i. According to industry best practices and guidelines, and HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two digits for the month, and DD representing two digits for the day of the month).

        Sometimes this is alternately expressed as YYYYMMDD.[1]

  ii. The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[2], 2011[3], 2012[4], 2013[5], 2014[6], and 2016.[7]

  iii. CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.[8]

  iv. The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and

---

[1] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[2] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 761 (Aug. 20, 2010), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R761OTN.pdf.

[3] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 988 (Oct. 28, 2011), available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[4] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1050 (Feb. 29, 2012), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[5] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1277 (Aug. 9, 2013), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[6] Memorandum from Tracey McCutcheon, Acting Director, Medicare Drug Benefit and C & D Data Group, and Laurence Wilson, Director, Chronic Care Policy Group, to All Part D Plan Sponsors and Medicare Hospice Providers (Mar. 10, 2014) (on file with author), *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[7] Memorandum from Cheri Rice, Director, Medicare Plan Payment Group, and Cathy Carter, Director, Enterprise Systems Solutions Group, to All Medicare Advantage, Prescription Drug Plan, Cost, PACE, and Demonstration Organizations Systems Staff (Nov. 9, 2016) (on file with author), *available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS- Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017- Software-Release.pdf.

[8] Local Coverage Determination (LCD) Date of Service Criteria, *available at* https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAA.

                properly selected as compensable or non-compensable claims.

        v. In general, ensuring the accuracy of dates, and other data is essential to analyzing claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

    b. <u>Medical Diagnosis and Procedure Codes</u>:

        i. Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[9][10]

        ii. International Classification of Diseases (ICD-9 and ICD-10) – Hospitals report diagnosis information using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of service is before October 1, 2015) or ICD-10 CM (if the date of service is on or after October 1, 2015).

        iii. Inpatient medical procedures ICD-9 Volume 2 and Volume 3 and ICD-10

---

[9] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[10] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs" and began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, gender, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10-CM if the date of service is on or after October 1, 2015.

        PCS – These codes are used to describe inpatient medical procedures, excluding the physician's bill.

    iv. Current Procedural Terminology ("CPT") – CPT[11] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4, is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[12]

    v. Ambulatory Patient Classification (APC) – Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and similar costs.[13]

    vi. Healthcare Common Procedure Coding System (HCPCS) – HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[14]

    vii. Medical Data Code Sets – The standard Code set for medical diagnosis and

---

[11] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[12] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, *available at* http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003- ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics- initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003- ncvhs-subcommittee-on-standards-and-security-hearing/.

[13] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[14] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

        procedure codes in health care claims is a series of digits as specified in 45 C.F.R. § 162.1002.

viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

ix. CMS primarily utilizes two systems of classification: (1) International Classification of Diseases ("ICD-9" and "ICD-10") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. § 162.1002.

# APPENDIX II

## Assignment

### Blue Cross & Blue Shield of Rhode Island

On May 30, 2019, **Blue Cross & Blue Shield of Rhode Island** ("BCBSRI") entered into a Statement of Work and Claims Purchase Agreement & Assignment with MSP Recovery, LLC whereby it irrevocably assigned to MSP Recovery, LLC all rights to recover payments pursuant to the MSP law (the "BCBSRI Assignment"). The BCBSRI Assignment specifically states:

> Client irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to (i) all Claims for which it has sent claims data to MSP Recovery, LLC, whether based in contract, tort or statutory right, and all related to recovery rights arising from and related all claims data transferred to MSP Recovery, LLC, and (ii) any and all causes of action, claims and demands of whatsoever nature relating to payments for healthcare services provided to Client's members and enrollees, and related legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that Client had, may have had, or has asserted against any party in connection with the Claims and (iii) all causes of action, claims, rights and demands of whatsoever nature, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "*Assigned Claims*").

**Composite Exhibit C, BCBSRI Assignment, at 1.2.1.**

Thereafter, effective on June 10, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the BCBSRI Assignment to Series 16-05-461, a designated series of MSP Recovery Claims, Series LLC (the "Series Assignment"). The Series Assignment from MSP Recovery, LLC to Series 16-05-461 states:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "*Assigned Claims*") as such terms are defined in the *Recovery Agreement*. This Assignment includes all the Assigned Claims irrespective of when the claims were vested in **BCBS Rhode Island**, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and

claims against primary payers and/or third parties that may be liable to **BCBS Rhode Island** arising from or relating to the Claims and all information relating thereto.

**Composite Exhibit C, Series Assignment I, at 1.**

The BCBSRI Assignment contemplated that the Parties would enter into a "stand-alone assignment document evidencing" the BCBSRI Assignment at § 5.1. Following the contemplated due diligence period, the stand-alone assignment became effective May 30, 2019, thereby approving and consenting to the Series Assignment and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSP Recovery Claims, Series LLC or any of its designated series, including but not limited to, Series 16-05-461.

Further, on October 22, 2020, Series 16-05-461 entered into an assignment agreement with Series 44-20-461, a designated series of Series 44, whereby it irrevocably assigned all rights it acquired through its assignment agreement with MSP Recovery, LLC. This third assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties, and was entered into under Florida law:

> [Series 16-05-461] . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to [Series 44-20-461] and its successors and assigns, (i) any and all of Assignor's right, title, ownership, and interest in and to that Agreement, as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the Agreement.
>
> This Assignment includes all the Assigned Claims irrespective of when the claims were vested in BCBSRI, inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to BCBSRI arising from or relating to the Claims and all information relating thereto.

**Composite Exhibit C, Series Assignment II, at 1.**

Consideration was given between each party in executing these assignments.